UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**FILED**

OCT 3 1 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-122-GWU

TINA COLLETT
O.B.O. JOSEPH COLLETT,                                              PLAINTIFF

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY                        DEFENDANT

## INTRODUCTION

Tina Collett appeals from the negative administrative decision on her son

Joseph Collett's application for Child's Supplemental Security Income (SSI)

benefits. The case is before the Court on cross-motions for summary judgment.

## LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 <u>strict</u> standards for child's SSI claims were adopted. The Welfare

Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered
> disabled for the purposes of this title if that individual has a medically
> determinable physical or mental impairment which results in marked
> and severe functional limitations, and which can be expected to result
> in death, or which has lasted, or can be expected to last for a
> continuous period of not less than 12 months.

Thus, a child's SSI claim can be granted now only if there is a "marked and severe

functional limitation(s)." The impairment must meet, medically equal, or functionally

Collett for Collett

equal in severity one of the Listing of Impairments found at 20 C.F.R. Part 404,

Subpart P, Appendix 2.  20 C.F.R. Section 416.924.

The implementing regulations require the agency to determine if the child's

impairment(s) meet any Listing of Impairments sections found at 20 C.F.R. Part

404, Subpart P, Appendix 1.  20 C.F.R. Section 416.924.  If this step is not satisfied,

the fact finder is required to consider limitation of specific functioning, broad areas

of development or functioning, episodic impairments, and limitations related to

medication effects to determine "functional equivalence" to the LOI.  Section

416.926a.  Functional equivalence is established if the child has one area of

extreme functional limitations (i.e., very serious interference with functioning) or two

areas of marked limitation (i.e., serious interference with functioning).  Id.

## DISCUSSION

The administrative law judge (ALJ) determined that although Collett had

medically determinable impairments of bronchitis and a depressive disorder, he had

no "severe" impairments (Tr. 19).  Thus, the claim for benefits was denied.  (Id.).

The plaintiff's mother filed an application for benefits, alleging that the plaintiff

became disabled in October, 2001 (Tr. 53) due in part to asthma (Tr. 62).

Red Bird Clinic records show that the plaintiff received vaccines, as well as

specific treatment for physical complaints.  Collett only sought treatment for a

"cough, subjective fever, sneezing, runny nose, nasal congestion" once, at which

time asthma was not actively diagnosed and no functional limitations were

mentioned. (Tr. 134).  The plaintiff was seen twice in early 2002, once for asthmatic

Collett for Collett

bronchitis (with a "slight" amount of wheezing), and once for a viral syndrome, which was specifically stated not to have progressed to asthmatic bronchitis. (Tr. 133,134).

The plaintiff sought treatment at Mary Breckenridge Healthcare's Rural Health Clinic beginning in September, 2002, when he was treated for a rash on his feet. (Tr. 151). The next treatment came in mid-October for another transient complaint after he hit his head on a concrete wall (Tr. 148) and was diagnosed merely with a contusion (Tr. 144) after a CT scan of the head proved normal (Tr. 145). Exercise-induced asthma was only diagnosed on an October 30th office visit; however, at that time, the lungs were clear and the plaintiff was merely told to use his inhaler prior to exercise. (Tr. 143). The plaintiff apparently did not return to the facility until November, 2004, when he was seen several times. (Tr. 188-195). On the first visit on November 9th, although the plaintiff complained of a cough and a runny nose (in addition to abdominal pain and a headache), his lung sounds and airway were clear and his breathing non-labored. (Tr. 195). When seen on the 17th, again for cough and congestion, the findings regarding his breathing and lungs remained the same. (Tr. 191). A viral syndrome was the only diagnosis. (Tr. 189).

Meanwhile, in June, the plaintiff had been seen at the Frontier Nursing Service, mainly for mental health complaints. A cursory physical examination was evidently performed, yielding no obvious abnormalities other than a finding of acne on the face. (Tr. 176).

Collett for Collett

Understandably, in view of the aforesaid evidence regarding physical complaints, the medical reviewers opined that no physical impairment Listing had been met (Tr. 161, 169) and were even generous in noting that there was a "less than marked" limitation to the health and physical well being functional domain.

The mother, who had also listed "nerves" as a source of disability, indicated that the child "gets really angry, doesn't like it around people much, likes to be by himself [. . .] stays stressed out all the time over nothing, doesn't like to be displine [sic,] doesn't like to do chores." (Tr. 87). With regard to the child's mental impairments, the decision requires more in depth analysis.

The plaintiff had possibly received mental health counseling since 2002 (Tr. 176), albeit Kentucky River Community Care (KRCC) records only document treatment since May, 2003. Progress notes from the latter date indicate that the plaintiff was then 14 years old and dealing with his father abusing his mother; he was described as neat, cooperative, alert, attentive, oriented with an average intelligence and intact memory, but also a blunted affect. (Tr. 159-160). A depressive disorder was diagnosed (Tr. 160). The pending divorce remained an issue in June when the plaintiff indicated he had passed the eighth grade. (Tr. 156). The plaintiff cooperated the next session, but reportedly had been oppositional to his mother. (Tr. 155). The family was planning to move, and there were some rejection issues vis-a-vis the father. (Tr. 155). At the next session, the plaintiff had been less defiant at home, but spent most of his time elsewhere and said his mood was "good"; he "warmed up" to the therapist during the session and indicated that

Collett for Collett

he had girlfriends calling him at home. (Tr. 154). In December, he was cooperative during the session, but had refused to help at home and become angry with his sister. (Tr. 152).

His therapy continued into 2004. When seen again in March, the plaintiff reported doing better at school and home and no longer feeling sad; the therapist noted good eye contact, a happy mood and a full range of affect. (Tr. 220). In June, however, the plaintiff reported being angry with his father and at being made to come to therapy, although he was described as friendly, talkative and cheerful in the lobby; a dysthymic disorder was diagnosed as was malingering (based on his mother's pursuit of SSI for her children even though she admitted her daughter was doing "great"). (Tr. 216, 219). In July, an assessment was made with the diagnoses of an adjustment disorder with depressed mood, dysthymia versus a mood disorder and possible malingering, with a GAF of 55/50. (Tr. 213).[1] In early October, he reported feeling happy and exhibited good eye contact (Tr. 207) as well as being calm, cooperative and friendly (Tr. 206). After a breakup with his girlfriend, he was quiet with a sad affect. (Tr. 205). In December, his therapist described him as calm, cooperative and friendly but thinking of quitting school and feeling sad sometimes. (Tr. 2040. The plaintiff apparently did not return until March, 2005 when his mother reported mood swings (Tr. 200); a urine screen for drugs was

---

[1]Scores between 51 and 60 are consistent with "moderate . . . difficulty in social, occupational or school functioning", and those between 41 and 50 are consistent with "serious symptoms" as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV).

Collett for Collett

negative (Tr. 199).  In June, the plaintiff had good eye contact and reportedly was doing better.  (Tr. 201).

The medical reviewers opined that no mental health Listing had been met (Tr. 161, 169), but  did not give an opinion one way or the other about related functional domains.  (Tr. 163, 171).

Given his ninth grade teachers' responses indicating only "slight" problems (Tr. 89-93), the plaintiff's admission at the administrative hearing that he has a girlfriend and a group of friends (Tr. 229), KRCC progress notes showing periods showing periods of situational sadness and improvement, and medical reviewers' indication that no Listings had been met (Tr. 161, 169), it would not appear that the plaintiff is entitled to benefits <u>automatically</u> at this juncture based on his mental condition.

However, a treating source from KRCC <u>did</u> cite a GAF of 50 at one point (Tr. 213), which suggested disabling severity of symptoms, and the staff <u>did</u> provide a variety of mental condition diagnoses.  This information was not seen or discussed by the medical reviewers, who did not express an opinion.  Thus, the case must be remanded for further consideration of the mental restrictions suffered by the plaintiff.

This the _3/_ day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE